**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK OSHINSKIE, | Civil Action No. |
| Plaintiff, | 17-3696 (SDW) (LDW) |
| v. | **REPORT AND RECOMMENDATION** |
| JAMIE O'GRADY, JOHN DOE, and THE CAULDRON, INC., | |
| Defendants. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is defendants' motion to dismiss for lack of personal jurisdiction and improper venue. (ECF No. 38). Plaintiff filed his opposition on August 6, 2018. (ECF No. 39). The Honorable Susan D. Wigenton, U.S.D.J., referred this motion to the undersigned for a Report and Recommendation. This motion is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions and for good cause shown, the Court recommends that defendants' motion be **GRANTED**.

I.      **BACKGROUND**

Plaintiff Mark Oshinskie is the author of an article entitled "How I Learned to Hate the Bomb: End the Three Point Shot in Basketball" (the "Article"). Plaintiff alleges that he published the Article online utilizing the Medium.com platform and subsequently registered the Article with the United States Copyright Office. (Complaint ¶¶ 14-15, ECF No. 1). He further alleges that on December 2, 2015, defendant Jamie O'Grady solicited permission to republish the Article on his sports news website The Cauldron. (*Id.* ¶ 16). According to plaintiff, O'Grady promised that plaintiff would retain all rights over the Article, including the right to approve any edits to the

Article prior to publication on The Cauldron; however, O'Grady allegedly made substantial revisions to the Article and published it on the Cauldron without notice to plaintiff or permission. (*Id.* ¶¶ 17-18, 20). Plaintiff seeks damages for copyright infringement, misappropriation of name or likeness, and breach of contract by fraud in the inducement.

Defendants moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 27). The Court granted plaintiff the opportunity to take jurisdictional discovery to support his opposition to the motion to dismiss. (ECF No. 34). Accordingly, plaintiff served jurisdictional interrogatories and document requests on defendants, who answered as follows.[1] Defendant O'Grady is the owner of the now defunct website, The Cauldron; he resides in North Carolina. (O'Grady Decl. ¶¶ 2, 5, ECF No. 39-6). O'Grady affirms that he has never lived in New Jersey, owned property in New Jersey, travelled to New Jersey for business related to The Cauldron, or conducted, ran, or owned any other business located or operated in New Jersey. (*Id.* ¶ 3).

Defendant The Cauldron is a Delaware corporation, with its principal place of business in North Carolina. (*Id.* ¶¶ 4-5). The Cauldron published general sports-related content exclusively on the internet. (*Id.* ¶ 11). That content was free to users and could be accessed in any geographic area where users were located. (*Id.* ¶¶ 9, 11). The Cauldron's articles were not targeted at any particular state and were available anywhere the internet is accessible. (*Id.* ¶ 11). The Cauldron sourced content in three ways: (1) it paid contributors to create articles; (2) it accepted online

---

[1] Plaintiff argues in his opposition to the motion that defendants' responses to discovery requests were incomplete and evasive. (Plaintiff's Opposition Brief at 2, ECF No. 39). However, in a June 25, 2018 letter to the Court, plaintiff represented that he "believes it is not necessary to devote additional time to jurisdictional discovery," and he waited nearly one month after the deadline for completion of jurisdictional discovery had passed to raise any objections about defendants' discovery responses. (ECF No. 37). Thus, any disputes related to jurisdictional discovery were waived.

submissions from amateurs seeking to be published without compensation; and (3) it solicited via email authors of articles previously published via Medium.com to submit their articles for republication without compensation on The Cauldron. (Answers to Plaintiff's First Set of Interrogatories ¶ 11, ECF No. 39-3).

All of The Cauldron's operations took place in O'Grady's home in North Carolina. (O'Grady Decl. ¶ 5). The Cauldron had no regular employees, nor did it employ any contract editors who worked or lived in New Jersey. (*Id.* ¶ 10). O'Grady himself edited the Article from his home in North Carolina. (*Id.*). None of The Cauldron's paid contributors lived in New Jersey, and due to the fact that unpaid contributors submitted their articles online, O'Grady does not know how many contributing writers, if any besides plaintiff, lived in New Jersey. (Answers to Plaintiff's Jurisdictional Interrogatories ¶ 3, ECF No. 39-4; O'Grady Decl. ¶ 8). The Cauldron's only source of revenue was Medium.com, a corporation located in San Francisco, California. (O'Grady Decl. ¶ 12).

The parties' interactions occurred entirely in cyberspace. After plaintiff initially published the Article on Medium.com, O'Grady clicked a button within the Medium platform, which generated an email to plaintiff requesting that he submit the Article to The Cauldron. (Answers to Plaintiff's Jurisdictional Interrogatories ¶ 12). Defendant communicated with plaintiff about the publication of the Article exclusively through email. (O'Grady Decl. ¶ 6; Pearce Cert. Ex. A, ECF No. 39-2). O'Grady was unaware of the fact that he was communicating with someone located in New Jersey. (O'Grady Decl. ¶ 7). Plaintiff never informed O'Grady that he resides and wrote the Article in New Jersey. (*Id.*).

Following the close of jurisdictional discovery, defendants renewed their motion to dismiss for lack of personal jurisdiction and improper venue. (ECF No. 38). In opposition, plaintiff

submitted email correspondence between plaintiff and O'Grady, certain of O'Grady's interrogatory responses, O'Grady's July 26, 2018 declaration, and a February 22, 2017 Yahoo Finance article regarding the failed $1.8 million acquisition of The Cauldron by Chat Sports. (Pearce Cert., Exs. A-E, ECF No. 39-1–39-6).

## II.    DISCUSSION

For the reasons set forth below, the undersigned recommends the District Court find that plaintiff has not met his burden to show the existence of personal jurisdiction or that venue in the District of New Jersey is appropriate.

### A.    Personal Jurisdiction

When a defendant challenges the Court's exercise of personal jurisdiction, plaintiff bears the burden of proving that jurisdiction is proper. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Where the district court does not hold an evidentiary hearing, plaintiff must establish only a *prima facie* case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under a *prima facie* standard, "the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor." *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 476 (3d Cir. 2011). Once the motion is made, however, and plaintiff's allegations are challenged by affidavits or other evidence, "plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted); *see also Metcalfe*, 566 F.3d at 330 ("'[O]nce a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'") (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). Plaintiff ultimately must prove the existence of jurisdiction by a preponderance of the evidence, although such a showing is unnecessary at the preliminary stages of litigation.

*LaSala*, 410 F. App'x at 476; *UHS of Delaware, Inc. v. United Health Servs., Inc.*, No. 12-cv-485, 2013 WL 12086321, at *4 n.1 (M.D. Pa. Mar. 26, 2013) ("[A]lthough the burden of persuasion always lies with the non-moving party, the burden of production rests initially with the party moving for dismissal under Rule 12(b)(2).").

A federal court in New Jersey exercises jurisdiction to the extent permitted by New Jersey law. *See Miller Yacht Sales*, 384 F.3d at 96. New Jersey's long-arm statute permits the exercise of jurisdiction over non-residents "'to the uttermost limits permitted by the United States Constitution.'" *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986) (quoting *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971)). Therefore, "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation omitted).

The Court can assert either general or specific jurisdiction over a defendant. *Bristol-Myers Squibb Co. v. Super. Ct. Cal.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction over a defendant exists in the forum of an individual's domicile and the forum "in which [a] corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "A court with general jurisdiction may hear *any* claim against that defendant." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. Specific personal jurisdiction, on the other hand, "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists: (1) the defendant must have "purposefully directed [its] activities at the forum"; (2) the

litigation must "arise out of or relate to at least one of those activities"; and (3) if the first two requirements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotations omitted).

        1.    <u>General Jurisdiction</u>

In determining whether the defendants are subject to general jurisdiction, the Court considers whether defendants' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop*, 564 U.S. at 919). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop*, 564 U.S. at 924. In all but "exceptional case[s]," a corporation is subject to general jurisdiction in its place of incorporation and its principal place of business. *Daimler AG*, 517 U.S. at 139 n.19.

The sole jurisdictional allegation in the complaint is that "defendants are subject to both specific and general personal jurisdiction in this district as defendants' publications are marketed and sold in this district and defendants solicit readers, customers and advertisers in this district and derive revenue from their business operations in this district." (Complaint ¶ 8). With respect to defendant O'Grady, there is no dispute that his domicile is in North Carolina, and plaintiff has not come forth with any "competent evidence" to counter O'Grady's sworn statement that he has never lived in New Jersey, owned property in New Jersey, or owned any business located or operated in New Jersey such that he could be considered "at home" in this state. The fact that O'Grady lived and worked in New York prior to 2012 is irrelevant to the exercise of personal jurisdiction in New Jersey.

Defendant The Cauldron is a Delaware corporation with its principal place of business in North Carolina. Even accepting as true plaintiff's allegations that The Cauldron solicits readers,

customers, and advertisers in New Jersey and is available to people in New Jersey via the internet, those facts do not establish the continuous and systematic contacts required to subject The Cauldron to personal jurisdiction in this District. *See UHS of Delaware*, 2013 WL 12086321, at *8 n.6 ("Generally speaking, Internet contacts, standing alone, will not constitute the substantial, continuous, and systematic contacts required for general jurisdiction. Today it is common, if not expected, that businesses maintain web sites, often with interactive capabilities through which customers can communicate with the businesses to review and, presumptively, to obtain certain products or services. If courts predicated general jurisdiction on Internet presence alone, most businesses would be subject to personal jurisdiction in every forum."). Moreover, plaintiff has not contested defendant's sworn statements that The Cauldron did not employ any writers or editors who lived or worked in New Jersey, and The Cauldron's content is not targeted specifically at New Jersey. Instead, plaintiff argues, based on "basic principles of probability," that given the population of this state, many readers of and unpaid contributors to The Cauldron must have been from New Jersey. Such speculation, even if true, does not establish the requisite level of contacts with New Jersey to subject The Cauldron to general jurisdiction here. This is not the "exceptional case" in which a non-resident defendant's contacts with New Jersey are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*, 517 U.S. at 139 n.19.

2. Specific Jurisdiction

Plaintiff argues that the Court can exercise specific personal jurisdiction over defendants under any of three theories: (1) the sliding scale test of *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); (2) the effects test of *Calder v. Jones*, 465 U.S. 783 (1984); or (3) the Second Circuit's opinion in *Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497 (2d Cir. 2011).

In cases involving contacts with the forum state via the internet, the Court applies the *Zippo* sliding scale analysis whereby "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124; *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). "At one end of the spectrum are situations where a defendant clearly does business over the Internet" with consumers in the forum state. *Zippo*, 952 F. Supp. at 1124. "At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction." *Id.* When considering the middle ground – websites that allow for some interaction with people in the forum state – the Court looks to "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine whether personal jurisdiction exists. *Id.* However, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.[2]

---

[2] Although *Zippo* and *Toys "R" Us* address specific jurisdiction, several Courts in this District have applied the sliding scale test when considering the exercise of general jurisdiction over a defendant. *See, e.g.*, *Bellator Sport Worldwide, LLC v. Zuffa, LLC*, No. 10-cv-4091 (DMC-JAD), 2011 WL 13141495, at *4-*6 (D.N.J. May 16, 2011); *Roscoe v. P.O.W. Network*, No. 10-cv-1043 (RBK), 2010 WL 3906793, at *5 (D.N.J. Sept. 30, 2010). Thus, this analysis may supply an additional basis for the Court's recommendation that general jurisdiction over defendants is not supported.

Here, the "level of interactivity and commercial nature" of The Cauldron are minimal. The Cauldron did have a function to allow writers to submit articles for consideration for publication, but this level of interactivity is at the low end of the spectrum. *See Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 212 (3d Cir. 2014) (website that "only allows potential customers to email requests for appointments" was "essentially passive" under *Zippo*); *New Generation Devices, Inc. v. Slocum Enters., Inc.*, No. 04-cv-2583 (KSH), 2005 WL 3078181, at *5 (D.N.J. Nov. 15, 2005) (website that "merely allows interested parties to enter their contact information to obtain more information" was insufficiently interactive to support personal jurisdiction). The Cauldron was not a subscription-based publication; it did not offer anything for sale and any reader could access its sports articles for free. As in *Ackourey*, the fact that The Cauldron "does not permit customers to place orders, make payments, or engage in any business transactions" renders it "essentially passive" and thus does not provide a basis for the exercise of personal jurisdiction. 573 F. App'x at 212.

Moreover, there are no allegations that defendants purposefully availed themselves of the privilege of engaging in any activity in New Jersey. *See Toys "R" Us*, 318 F.3d at 454. Plaintiff has not alleged that The Cauldron specifically targeted a New Jersey audience; indeed, there is nothing in the complaint or supporting certifications suggesting that The Cauldron intentionally published articles about New Jersey sports teams to attract readers from this State or posted advertisements directed at New Jersey. While The Cauldron was certainly available to readers in New Jersey, plaintiff has not demonstrated that defendants knowingly interacted with any New Jersey readers or writers who submitted articles for publication. *See Roscoe*, 2010 WL 3906793, at *5 ("Although . . . Defendants' website provided a forum through which citizens of New Jersey and any other state could upload information and make donations to the P.O.W. Network, Plaintiff

does not allege that Defendants knew or had reason to know that any citizens of New Jersey actually accessed Defendants' website and made donations, uploaded information, or purchased any of Defendants' products."). Instead, plaintiffs argue that any revenues defendants earned from Medium.com were likely scaled to The Cauldron's web traffic, so defendants must have indirectly benefited from viewers in New Jersey. Such speculative and indirect financial gains do not establish *purposeful* availment of the benefits of operating in this forum.

Alternatively, plaintiff argues that the Court may exercise specific jurisdiction based on the "effects test" set forth in *Calder v. Jones*. Personal jurisdiction under the *Calder* effects test will lie where: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). "Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). "To establish that the defendant 'expressly aimed' [its] conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* at 297-98 (quoting *IMO Indus.*, 155 F.3d at 266).

There is no dispute that plaintiff submitted the Article to The Cauldron using an online link and then communicated with O'Grady about publishing the Article exclusively by email. Plaintiff and O'Grady never spoke on the phone or communicated by mail such that O'Grady would have reason to know that plaintiff resides in New Jersey. O'Grady affirms that he did not know where

plaintiff lived at the time the Article was published on The Cauldron, and plaintiff did not in any way alert O'Grady to his state of residence; plaintiff has not challenged O'Grady's lack of knowledge. Thus, plaintiff has not established that O'Grady (and through him, The Cauldron) expressly aimed any conduct, tortious or otherwise, at New Jersey.[3]

Finally, plaintiff contends that copyright infringement cases involving internet publications are properly brought in the copyright holder's state of domicile following *Penguin Group*. *Penguin Group* is a clarification by the New York Court of Appeals of the situs of injury requirement of New York's long-arm statute "in copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet" and has no bearing on this Court's personal jurisdiction analysis in a case that does not allege digital piracy and applies New Jersey law.    640 F.3d at 500.    Plaintiff cites no case in the Third Circuit applying or even considering *Penguin Group*, and the Court declines to do so here. *See, e.g.*, *Ackourey*, 573 F. App'x at 212 (affirming Rule 12(b)(2) dismissal of copyright infringement action without considering *Penguin Group* or the copyright holder's domicile); *compare IMO Indus.*, 155 F.3d at 263 ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*."). Although plaintiff challenges the logic of requiring "deliberate targeting of a state . . . to establish specific personal jurisdiction in an Internet copyright infringement setting," that is exactly what the *Toys "R" Us* Court mandated. *See* 318 F.3d at 451-52.

---

[3] Plaintiff's argument that the failure to exercise personal jurisdiction over defendants here creates a double standard for print and internet publishers is unfounded. Both print and internet publishers can be haled into court in New Jersey when they purposefully avail themselves of the privilege of operating in this state.

**B.    Venue**

Venue in a copyright action is governed by 28 U.S.C. § 1400(a), which provides that an action under the federal copyright laws "may be instituted in the district in which the defendant or his agent resides or may be found." A defendant in a copyright action "may be found" wherever the defendant is subject to personal jurisdiction; therefore, "'venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'" *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, No. 08-cv-2158 (MLC), 2008 WL 4755350, at *1 (D.N.J. Oct. 29, 2008) (quoting *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F. Supp. 636, 638 (E.D. Pa. 1998)). As personal jurisdiction will not lie in New Jersey, the Court recommends that venue also be found to be improper.

**III.    CONCLUSION**

For the foregoing reasons, the Court recommends that the defendants' motion to dismiss for lack of personal jurisdiction and improper venue be **GRANTED**. The parties are hereby advised that, pursuant to Fed. R. Civ. P. 72(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated:  October 25, 2018

_Leda Dunn Wettre_
**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original:      Clerk of the Court
      cc:      Hon. Susan D. Wigenton, U.S.D.J.
               All Parties